# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 20-271V
Filed: April 2, 2025

* * * * * * * * * * * * * *
FRANK WEINBERG,

      Petitioner,

v.

SECRETARY OF HEALTH
AND HUMAN SERVICES,

      Respondent.
* * * * * * * * * * * * * *

*Leigh Finfer, Esq.*, Muller Brazil LLP, Dresher, PA, for petitioner.
*Adam Muffett, Esq.*, U.S. Department of Justice, Washington, DC, for respondent.

## RULING ON ENTITLEMENT[1]

**Roth**, Special Master:

On March 11, 2020, Frank Weinberg filed a petition for compensation pursuant to the National Vaccine Injury Compensation Program,[2] alleging that he suffered a left shoulder injury related to vaccine administration ("SIRVA") as a result of the influenza ("flu") vaccine he received on November 16, 2017. Petition, ECF No. 1.

After reviewing all the evidence presented, I find that petitioner has provided preponderant evidence that the flu vaccine he received caused him to suffer a compensable injury.

### I.   Applicable Statutory Scheme

Under the National Vaccine Injury Compensation Program, compensation awards are made to individuals who have suffered injuries after receiving vaccines. In general, to gain an

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. Any changes will appear in the document posted on the website.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

award, a petitioner must make several factual demonstrations, including showing that an individual received a vaccination covered by the statute; received it in the United States; suffered a serious, long-standing injury; and has received no previous award or settlement on account of the injury. Finally – and the key question in most cases under the Program – the petitioner must also establish a causal link between the vaccination and the injury. In some cases, the petitioner may simply demonstrate the occurrence of what has been called a "Table Injury." That is, it may be shown that the vaccine recipient suffered an injury of the type enumerated in the "Vaccine Injury Table," corresponding to the vaccination in question, within an applicable time period following the vaccination also specified in the Table. If so, the Table Injury is presumed to have been caused by the vaccination, and the petitioner is automatically entitled to compensation, unless it is affirmatively shown that the injury was caused by some factor other than the vaccination. § 300aa-13(a)(1)(A); § 300 aa-11(c)(1)(C)(i); § 300aa-14(a); § 300aa-13(a)(1)(B).

Relevant to this case, the Vaccine Injury Table lists a Shoulder Injury Related to Vaccine Administration or "SIRVA" as a compensable injury if it occurs within 48 hours of vaccine administration. § 300aa-14(a), as amended by 42 CFR § 100.3. Table Injury cases are guided by statutory "Qualifications and aids in interpretation" ("QAIs"), which provide a more detailed explanation of what should be considered when determining whether a petitioner has suffered an injury listed on the Vaccine Injury Table. 42 CFR § 100.3(c). To be considered a "Table SIRVA," petitioner must show that his injury fits within the following definition:

> SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis . . . . A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time-frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

2

42 CFR § 100.3(c)(10).

Alternatively, if no injury falling within the Table can be shown, the petitioner may still demonstrate entitlement to an award by showing that the vaccine recipient's injury was caused-in-fact by the vaccination in question. § 300aa-13(a)(1)(A); § 300aa-11(c)(1)(C)(ii). To so demonstrate, a petitioner must show that the vaccine was "not only [the] but-for cause of the injury but also a substantial factor in bringing about the injury." *Moberly ex rel. Moberly v. Sec'y of Health & Human Servs.*, 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010) (quoting *Shyface v. Sec'y of Health & Human Servs.*, 165 F.3d 1344, 1352–53 (Fed. Cir. 1999)); *Pafford v. Sec'y of Health & Human Servs.*, 451 F.3d 1352, 1355 (Fed. Cir. 2006). In particular, a petitioner must show by preponderant evidence: (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of proximate temporal relationship between vaccination and injury in order to prove causation-in-fact. *Althen v. Sec'y of Health & Human Servs.,* 418 F.3d 1274, 1278 (Fed. Cir. 2005).

For both Table and Non–Table claims, Vaccine Program petitioners must establish their claim by a "preponderance of the evidence". § 300aa-13(a). That is, a petitioner must present evidence sufficient to show "that the existence of a fact is more probable than its nonexistence . . . ." *Moberly*, 592 F.3d at 1322 n.2. Proof of medical certainty is not required. *Bunting v. Sec'y of Health & Human Servs.*, 931 F.2d 867, 873 (Fed. Cir. 1991). However, a petitioner may not receive a Vaccine Program award based solely on her assertions; rather, the petition must be supported by either medical records or by the opinion of a competent physician. § 300aa-13(a)(1). Once a petitioner has established their *prima facie* case, the burden then shifts to respondent to prove, also by preponderant evidence, that the alleged injury was caused by a factor unrelated to vaccination. *Althen,* 418 F.3d at 1278 (citations omitted); § 300aa-13(a)(1)(B).

In this case, petitioner maintains that he suffered an injury consistent with a SIRVA Table injury. Alternatively, he asserts that the medical evidence supports a non-Table shoulder injury caused in fact by his flu vaccination. Petitioner's Brief at 8-11, ECF No. 30.

## II.   Procedural History

The petition was filed on March 11, 2020, along with medical records. Petitioner's Exhibits ("Pet. Ex.") 1-9, ECF No. 1. Petitioner filed a statement of completion on March 18, 2020, and the case was assigned to the Special Processing Unit ("SPU") on April 3, 2020. ECF Nos. 7-8.

Thereafter, the parties engaged in settlement negotiations for some time, but advised the Court that they had reached an impasse on September 21, 2021. ECF No. 22. Respondent filed his Rule 4(c) Report on November 5, 2021, recommending against compensation. Specifically, respondent argued that petitioner did not meet the criteria for a Table SIRVA because he was unable to show that there was no other condition or abnormality present that would explain his symptoms, and he complained of symptoms outside of his shoulder. ECF No. 23.

The case was reassigned to me on December 8, 2021. ECF Nos. 24-25. During a status conference held on March 1, 2022, the medical records were discussed, and the parties agreed that the case may benefit from the Vaccine Program's internal ADR program. ECF No. 26. The matter was then randomly assigned to the Chief Special Master for ADR on March 1, 2022. ECF No. 27. The parties engaged in settlement discussions, but attempts at resolution were again unsuccessful, and the case was removed from ADR on April 19, 2022. ECF No. 28. Petitioner filed a status report on April 20, 2022, requesting to file a Motion for Ruling on the Record. ECF No. 29.

Petitioner filed his Motion for Ruling on the Record on June 21, 2022. Motion, ECF No. 30. Respondent filed a response on July 5, 2022. Response, ECF No. 31. Petitioner did not reply.

I have determined that the parties have had a full and fair opportunity to present their cases and that it is appropriate to resolve this issue without a hearing. *See* Vaccine Rule 8(d); Vaccine Rule 3(b)(2); *Kreizenbeck v. Sec'y of Health & Human Servs*., 945 F.3d 1362, 1366 (Fed. Cir. 2020) (noting that "special masters must determine that the record is comprehensive and fully developed before ruling on the record."). Accordingly, this matter is now ripe for resolution.

### III.     Factual History

#### A.     Petitioner's Medical History

Petitioner is a police officer with no history of left shoulder injury. *See generally* Pet. Ex. 2.  He received a Fluarix vaccine in his left arm on November 16, 2017. Pet. Ex. 1.

On November 27, 2017, petitioner presented to his primary care physician ("PCP") with left arm pain. He reported persistent left arm pain that varied in location, including his shoulder above his elbow, his lower arm, his hands, and his left trapezius. Pet. Ex. 2 at 59; Pet. Ex. 3 at 4.[3] The pain was constant but varied in intensity and was aggravated even with small movements. He felt as though his arm was weak and described the pain as burning in quality. He had no prior history of shoulder or arm problems, and no recent fall or injury. Pet. Ex. 2 at 59. He reported that the pain occurred out of nowhere right after receiving the flu vaccine on November 16, 2017. He denied swelling, redness, or pain at the injection site or other symptoms. *Id*. Petitioner was examined by a nurse practitioner who noted a normal examination but for increased discomfort with soft palpation of the left arm and shoulder. The assessment was "left arm pain/neck pain/left shoulder pain, suspect musculoskeletal etiology, other possibility (sic) causes including muscle aches related to flu vaccine and/or myalgias from taking statins." *Id*. He was prescribed Skelaxin and directed to restart Mobic, avoid aggravating movements, and consider physical therapy ("PT") depending on his response to medications. *Id*.

Petitioner returned to the PCP on December 5, 2017, reporting that he was now experiencing numbness in his left first through third fingers noted as consistent with a C6-C7 radiculopathy, in addition to his left shoulder, left neck, and left arm soreness since receiving his

---

[3] Petitioner's Exhibit 3 contains the same primary care records as Petitioner's Exhibit 2.

flu vaccine. Pet. Ex. 2 at 59. Petitioner reported there may be a bit of weakness in his hand, but his grip was solid. On physical examination, the doctor noted normal range of motion of his cervical spine, but rotating his head to the left or bending laterally to the left elicited pain down his left arm. *Id*. There was no sensory or motor deficit in his left arm. He was assessed with stable cervical radiculopathy of C6-C7. A Medrol Dosepak was prescribed, with PT and an MRI to be considered if his symptoms did not respond. *Id*.

Petitioner presented for PT on December 19, 2017. Pet. Ex. 4 at 30-38. He reported onset of pain six weeks ago, after he received a flu vaccine. He described waking the next morning with pain down his left upper extremity and trunk, including scapular pain. He described a severe ache with intermittent sharp/shooting pain, numbness, and tingling into the hands that felt "like someone is grabbing my bicep or forearm" and was activity dependent. *Id*. at 31. He pointed to a radial distribution for his symptoms. He had hand swelling but denied thermal sensitivity, dermal color changes, weakness, or allodynia. He had been to the doctor twice and given muscle relaxers and steroids, but neither helped. *Id*. He was having trouble getting to sleep and was waking constantly. He reported trouble reaching up and down, though reaching down was worse and caused pain, while reaching up sometimes caused tingling. Cervical rotation to the left caused pain and limited his ability to drive, and it was "hard to keep his neck up." *Id*. The assessment was reduced and painful range of motion and consistent cervical spine hypomobility and movement impairment syndrome secondary to possible MD-diagnosed cervical radiculopathy. *Id*. at 34.

Petitioner returned to his PCP's office on January 22, 2018, reporting left arm numbness and pain, shoulder pain, and neck pain. Pet. Ex. 2 at 58. He was receiving PT for more than a month and noted worsening numbness going down his arm and including his thumb, index, and middle fingers. He acknowledged that the pain had lessened overall, but the numbness was fairly persistent, and he noticed numbness developing in his other two left fingers intermittently. He reported occasional weakness in his left arm. *Id*. Petitioner was convinced his current symptoms were caused by improper administration of the flu vaccine, and he still had intermittent injection site soreness. The last doctor he saw suspected cervical radiculopathy, but petitioner did not respond to the Medrol Dosepak or muscle relaxers. He also reported pain that could radiate up his arm from his wrist to elbow to shoulder. *Id*. He reported that his physical therapist was confused by his lack of response to treatment and suspected shoulder involvement. He was not taking any medications and denied tremors or any new joint pain or myalgias. Petitioner was adamant that he wanted both cervical and shoulder MRIs. *Id*. He was again examined by and assessed by a nurse practitioner, who noted no neurological deficits on examination. The assessment was suspected cervical radiculopathy, with less suspicion for reaction to flu vaccine administration, and possible shoulder involvement. Myalgia related to Lipitor use was noted as "less likely" in the differential. It was also noted that palpation of the lower arm triggered referred numbness to the fingers. An MRI of the cervical spine and left shoulder were ordered, and bloodwork was done. *Id*.

The MRI of the cervical spine on January 25, 2018, revealed mild degenerative changes of the cervical spine with minimal bilateral foraminal stenosis at C3-C4.  Pet. Ex. 2 at 53. MRI of the left shoulder on the same date revealed supraspinatus tendinopathy without evidence of

5

rotator cuff tear, mild to moderate AC joint arthropathy, biceps tenosynovitis, and slight increased signal in the superior labrum. Pet. Ex. 2 at 78.

Petitioner presented to Dr. Huffman at Penn Medicine Radnor Orthopedics on February 20, 2018, for left shoulder pain with radiculopathy into his hand status post flu shot in November 2017. Pet. Ex. 6 at 35; *see also* Pet. Ex 8 at 3.[4] In a letter dated February 20, 2018, Dr. Huffman wrote that petitioner presented for left shoulder pain since he received a flu vaccine on November 16, 2017. Petitioner reported immediate pain with more severe pain occurring that evening, and there had been no resolution of his symptoms. Dr. Huffman noted that he attended PT which helped slightly but then plateaued. He continued to have pain in and around the shoulder with numbness and tingling down his arm. Pet. Ex. 6 at 38. Dr. Huffman's examination revealed positive impingement signs, tightness in the pectoralis minor, tenderness to palpation over the coracoid process, and tenderness in the latissimus, upper trapezius, and interscalenes. Petitioner had a positive Wright's test with secondary thoracic outlet symptoms from his pectoralis minor tightness and rotator cuff impingement on examination. *Id.* at 39. An MRI showed slight fluid in the subacromial space consistent with bursitis, and there was a little bit of edema in the humeral head. Both were consistent with vaccine-related bursitis or SIRVA-type injury to the left shoulder. A Kenalog corticosteroid injection was administered. *Id*. at 39-40.

Petitioner returned to Dr. Huffman on April 3, 2018 for follow-up of his left shoulder. The problem list included bicipital tendinitis, bursitis, and brachial plexopathy of the left shoulder. Pet. Ex. 6 at 41. In a letter written following the examination, Dr. Huffman noted that petitioner had a flu vaccine in his left deltoid on November 16, 2017, that was "placed high. He had immediate pain, which increased and has not resolved." *Id*. at 44. He had a cortisone injection which petitioner said did not help much and increased his symptoms. He continues to have pain. *Id*. On examination, petitioner had tenderness around the bicipital groove, positive impingement signs, and numbness and tingling distally in his hand in the C6 distribution. He still had tenderness to palpation along the pectoralis minor. An EMG was ordered, and it was discussed that petitioner would likely need surgery in the form of biceps tenodesis, debridement, and decompression due the amount of fluid seen on the MRI in the subacromial space around the humeral head and along the bicipital groove extra-articularly. *Id*.

On April 24, 2018, Dr. Huffman wrote that he again saw petitioner, who had persistent pain around the biceps and AC joint with secondary impingement signs and symptoms. Pet. Ex. 6 at 48. An MRI showed edema in the AC joint and along the bicipital sheath. The plan was to proceed surgically with arthroscopic debridement and biceps tenodesis and distal clavicle excision and treatment, with cultures to be taken at the time of surgery. Empirical antibiotics were prescribed, and a preoperative examination was conducted the same day. *Id*. at 48-49.

An EMG performed on April 24, 2018 showed carpal tunnel syndrome with no other abnormalities in the left upper extremity.  Pet. Ex. 7 at 9.

---

[4] Petitioner's Exhibit 8 contains the same orthopedic records as Petitioner's Exhibit 6.

At an April 26, 2018 visit, petitioner's PCP documented "hx of an influenza injection placed incorrectly causing severe left shoulder pain." He further noted that petitioner was scheduled for arthroscopic surgery the following month. Pet. Ex. 2 at 11; Pet. Ex. 5 at 1.

On May 16, 2018, petitioner underwent surgery for coracoid impingement, biceps tendinitis, and bursitis, all of the left shoulder. Pet. Ex. 6 at 56-59; *see also* Pet. Ex. 8 at 20-23. The surgical procedure consisted of arthroscopic distal claviculectomy of the left shoulder, arthroscopy of the left shoulder with decompression of the subacromial and coracoacromial ligament release, and arthroscopic left shoulder biceps tenodesis. Pet. Ex. 6 at 56-57. Findings during surgery included an abnormal tendon tear at the biceps anchor with inflammation in the biceps groove, sub labral foramen in the anterior labrum, inflammation and fraying of the posterior labrum, an unstable type II tear of the superior labrum, and inflammation of the rotator interval. *Id*. at 57-58. There was inflammation and adhesions with thickening present throughout the bursa, and the AC joint was arthritic. *Id*. at 58.

Petitioner underwent another MRI of the left shoulder on September 19, 2018, due to continued shoulder pain and decreased range of motion. Pet. Ex. 2 at 27. The imaging was compared with the MRI done on January 25, 2018, and revealed interval coracoacromial decompression with widening of the AC joint and some nonspecific post-surgical edema at the resection site. *Id*. at 28. The impression noted that the findings can represent inferior joint capsulitis with concomitant rotator cuff interval synovitis, and that there was an apparent new tear with retraction of the biceps tendon, unless there was an interval history of tenodesis not readily appreciated by imaging. There was also a new partial-thickness articular surface tear of the distal supraspinatus tendon and increased mild subacromial-subdeltoid bursitis. *Id*.

On September 26, 2018, petitioner underwent manipulation of the left shoulder under anesthesia with fixation apparatus, arthrocentesis, and aspiration. Pet. Ex. 6 at 156-58. He received a Kenalog injection in the left glenohumeral joint. *Id*. at 158. He was noted to have persistent post-operative left shoulder stiffness following his May 2018 surgery with failure of conservative therapy. *Id*. at 157.

Petitioner presented to his PCP on October 23, 2018 with continued left shoulder pain. He had a left shoulder arthroscopy and was still doing PT, but he was recovering slowly and was frustrated. Pet. Ex. 2 at 9. He received a flu vaccine in his right shoulder on this date. *Id*. at 10.

On April 2, 2019, petitioner's surgeon Dr. Huffman wrote that petitioner had undergone surgery with biceps tenodesis, debridement, and decompression due to a left shoulder injury from a flu vaccine. Dr. Huffman stated that petitioner had reached maximum medical improvement but still had very minimal residual deficits. Pet. Ex. 2 at 25.

At a visit with his PCP on May 7, 2019, petitioner continued to have shoulder pain that was slowly improving after arthroscopy. He had some right fourth finger stiffness and "trigger finger" when he extends the digit. Pet. Ex. 2 at 6.

### B. Affidavit of Petitioner

Petitioner submitted a perfunctory affidavit affirming his receipt of a flu vaccine on November 16, 2017 in his left shoulder, that he sustained a left shoulder injury caused by that vaccination, and that he had no prior left shoulder injury. He affirmed that he suffered the residual effects or complications of that left shoulder injury for more than six months, and he has not received an award or settlement for his injuries. Pet. Ex. 9.

### IV. The Parties' Arguments

#### A. Petitioner's Motion

Petitioner asserted that he has provided evidence to satisfy his burden, establishing that he suffered a SIRVA caused by the flu vaccine he received on November 16, 2017, and is therefore entitled to compensation. Petitioner's Brief ("Pet. Br.") at 1.

Petitioner submits that he consistently reported the onset of his injury either "right after" or "ever since" the receipt of his flu vaccine, and described "immediate" pain following vaccination. Pet. Br. at 8 (citing Pet. Ex. 2 at 59; Pet. Ex. 3 at 4; Pet. Ex. 6 at 38). Therefore, petitioner has satisfied items (i) and (ii) of the SIRVA QAIs. *Id*.

In addressing respondent's contention that petitioner failed to satisfy the SIRVA requirements (iii) and (iv) due to his complaints of symptoms beyond the shoulder and his carpal tunnel diagnosis, petitioner argued that neither the cervical spine MRI nor the EMG reflected cervical pathology or radiculopathy. Pet. Br. at 8 (citing Pet. Ex. 5 at 6-7; Pet Ex. 7 at 9). While petitioner received treatment for his neck as well as his shoulder, this is not uncommon in SIRVA cases and there is no other pathology to blame. Further, petitioner's orthopedist did not suspect cervical involvement and potential brachial plexopathy was ruled out diagnostically. *Id*.

Petitioner argued that even though his PCP interpreted his pain as cervical, he was adamant with the PCP that his pain began in his arm. Further, his carpal tunnel findings "have no bearing on his SIRVA claim." Pet. Br. at 8-9. Therefore, petitioner has satisfied the requirements of (iii) and (iv). *Id*. at 9

Petitioner argued, in the alternative, that he has also satisfied his burden for a cause-in-fact claim. Pet. Br. at 9.

Petitioner argued that Prong I is not at issue because petitioner's claim is for a SIRVA and the causal theory has been established. Pet. Br. at 9 (citing *Tenneson v. Sec'y of Health and Human Servs.*, 2018 WL 3083140 at *1 (Fed. Cl. Spec. Mstr. Mar. 30, 2018). Petitioner explained that his diagnoses including tendinopathy, bursitis, and impingement "fit well within the SIRVA classification", which includes injuries to the bursa, ligaments, and tendons of the shoulder. Pet. Br. at 9; *see* National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, 80 Fed. Reg. 45132-01 (2015).

As to Prong II, even though petitioner's PCP initially documented concerns with his neck or cervical spine, his medical records as a whole show that the focus thereafter was on his left shoulder as the primary problem. Pet. Br. 9. Further, petitioner repeatedly referenced the flu vaccine as the cause of his shoulder pain, reporting that the vaccine was improperly administered and that he had pain and soreness after the flu vaccine. Pet. Br. at 10 (citing Pet. Ex. 3 at 4-5; Pet. Ex. 2 at 59; Pet. Ex. 6 at 38).

Dr. Huffman, petitioner's orthopedic surgeon, interpreted petitioner's first MRI as consistent with SIRVA and "clearly correlated [his] symptoms to his shoulder", as he administered several injections into the subacromial space and chose to operate on his left shoulder twice. Pet. Br. at 10. Petitioner's PCP also documented that "an influenza injection was placed incorrectly causing severe left shoulder pain." *Id.* (citing Pet. Ex. 2 at 11). Finally, respondent has not raised any alternative cause for petitioner's injury. *Id.*

For Prong III, the Table requires onset within 48 hours of vaccination for SIRVA claims, which was what petitioner reported. Respondent has not raised any issue with the 48-hour onset. This satisfies the proximate temporal relationship required for *Althen* Prong III. Pet. Br. at 11; *see* Respondent's Report at 7, ECF No. 23.

Petitioner concluded that he received the flu vaccination on November 16, 2017, suffered a SIRVA, and is thus entitled to compensation under the Vaccine Act. Pet. Br. at 11.

## B. Respondent's Response

Respondent argued that petitioner has not satisfied his burden of proof in establishing that he suffered a left SIRVA caused by the flu vaccine he received on November 16, 2017. Respondent's Brief ("Resp. Br.") at 1. He further argued that petitioner asserted a causation-in-fact claim, but because SIRVA is an injury defined by administrative rulemaking, petitioner may not pursue a causation-in-fact SIRVA claim. Resp. Br. at 6 n.2. If petitioner can establish that he established a specific shoulder injury such as bursitis, adhesive capsulitis, or rotator cuff tear, then he may pursue a cause-in-fact claim by presenting a medical theory specific to the injury alleged to be evaluated under *Althen*. However, petitioner has not provided an expert report or other sufficiently reliable evidence of causation that satisfies the elements of *Althen*. *Id.*

Respondent agreed that petitioner had no prior left shoulder pain, injury, or other left shoulder issues. Resp. Br. at 1 (citing Pet. Ex. 2 at 58-114; Pet. Ex. 3 at 4-63). However, respondent argued that petitioner reported symptoms attributable to neurological signs, including pain and numbness extending into his hand. Resp. Br. at 8 (citing Pet. Ex. 2 at 59). As early as nineteen days after vaccination, petitioner reported numbness in his first through third fingers and weakness in his hand. *Id.* When he presented to PT, he complained of pain exacerbated by coughing and neck rotation that limited his ability to drive. Petitioner was initially thought to have symptoms consistent with C6-C7 radiculopathy. *Id.* (citing Pet. Ex. 4 at 4, 31-35; Pet. Ex. 2 at 59). An EMG revealed carpal tunnel syndrome, "which could explain his hand symptoms and is a condition unrelated to his vaccine." *Id.*

According to respondent, "[i]n order to demonstrate entitlement to compensation, petitioner must show that his complaints of symptoms that were outside of his shoulder did not represent a condition that more likely than not was the cause of the shoulder pain he suffered following his November 16, 2017 flu vaccination." Resp. Br. at 8. Respondent argued that on the current record, petitioner is unable to do so. Therefore, petitioner is not entitled to compensation. Resp. Br. at 8.

## V. Discussion

### A. Table SIRVA

#### 1. Petitioner is required to show there is no history of pain, inflammation, or dysfunction of the affected shoulder.

Respondent does not dispute that petitioner had no prior history of left shoulder pain or injury.

#### 2. Petitioner is required to show that the pain occurred within the specific timeframe.

Respondent did not specifically dispute the onset requirement. However, the specific timeframe on the Vaccine Injury Table for SIRVA is 48 hours post-vaccination. *See* 42 CFR § 100.3(a). To that end, petitioner reported pain that "occurred out of nowhere right after he received flu vaccine at pharmacy on 11/16/17"; soreness "ever since" receipt of the flu vaccine; and "immediate pain" after receiving the flu vaccine. Pet. Ex. 2 at 59; Pet. Ex. 3 at 4; Pet. Ex. 6 at 38. Petitioner has therefore satisfied onset within 48 hours of his receipt of the flu vaccination.

#### 3. Petitioner is required to show that the pain and reduced range of motion are limited to the shoulder.

Regarding the third SIRVA criterion, SIRVA case law demonstrates that "the gravamen of this requirement is to guard against compensating claims involving patterns of pain or reduced range of motion indicative of a contributing etiology beyond the confines of a musculoskeletal injury to the affected shoulder." *Grossmann v. Secretary of Health & Human Services*, 18-13V, 2022 WL 779666, at *15 (Fed. Cl. Spec. Mstr. Feb. 15, 2022) (citing *Werning v. Sec'y of Health & Human Servs.,* No. 18-0267V, 2020 WL 5051154, at *10 (Fed. Cl. Spec. Mstr. July 27, 2020) (finding that a petitioner satisfied the third SIRVA QAI criterion where there was a complaint of radiating pain, but the petitioner was "diagnosed and treated solely for pain and limited range of motion to her right shoulder.")). The Chief Special Master has reached the same conclusion on multiple occasions. *E.g.*, *Cross v. Sec'y of Health & Human Servs*., No. 19-1958V, 2023 WL 120783, at *7 (Fed. Cl. Spec. Mstr. Jan. 6, 2023) (finding that "despite the notations of pain extending beyond the shoulder, Petitioner's injury is consistent with the definition of SIRVA and there is not preponderant evidence of another etiology"); *K.P. v. Sec'y of Health & Human Servs*., No. 19-65V, 2022 WL 3226776, at *8 (Fed. Cl. Spec. Mstr. May 25, 2022) (holding that "claims involving musculoskeletal pain *primarily* occurring in the shoulder are valid under the Table even if there are additional allegations of pain extending to adjacent parts of the body").

Here, the medical records from petitioner's initial presentations document complaints of left shoulder and arm pain following receipt of the flu vaccine, along with pain and sensory symptoms extending from his neck to his hand and fingers. Pet. Ex. 2 at 59; Pet. Ex. 4 at 31, 33-35. Despite his insistence to the contrary, petitioner's initial medical records and PT treatment focused on cervical etiology, including cervicalgia and C6-C7 cervical radiculopathy. Pet. Ex. 2 at 58-59; Pet. Ex. 4 at 33-35, 99-101.

However, petitioner failed to respond to the treatment to his neck or a Medrol Dosepak, and he reported that his physical therapist was confused as to why he was not responding to treatment and suspected shoulder involvement. At the insistence of petitioner, an MRI of the left shoulder was ordered in addition to an MRI of the cervical spine. Pet. Ex. 2 at 58. The cervical spine MRI performed on January 25, 2018 revealed mild degenerative changes with minimal bilateral foraminal stenosis at C3-C4, but the MRI of the left shoulder revealed supraspinatus tendinopathy without evidence of rotator cuff tear, mild to moderate AC joint arthropathy, biceps tenosynovitis, and slight increased signal in the superior labrum. *Id*. at 53, 78.

Dr. Huffman noted petitioner's complaints of left shoulder pain with radiculopathy into his hand status-post-flu shot in November 2017, and his failed treatment with PT. Pet. Ex. 6 at 35, 38. Following examination and review of the MRIs, Dr. Huffman's assessment was that the MRIs were consistent with vaccine-related bursitis or a SIRVA type of injury to the left shoulder. A corticosteroid injection was administered to the left shoulder. *Id*. at 39. When the injection failed to provide relief and petitioner continued to exhibit pain, tenderness at the bicipital groove and to palpation along the pectoralis minor, positive impingement signs, and numbness and tingling distally in the hand in the C6 distribution on examination, Dr. Huffman ordered an EMG. *Id*. at 41, 44.

The EMG performed on April 24, 2018 revealed carpal tunnel syndrome and ruled out other abnormalities in the left upper extremity. Pet. Ex. 7 at 9. Petitioner's PCP now recorded "hx of an influenza injection placed incorrectly causing severe left shoulder pain." Pet. Ex. 2 at 11; Pet. Ex. 5 at 1.

Petitioner subsequently underwent two surgical procedures on his left shoulder. Findings during the first surgery included a tear at the biceps anchor with inflammation in the biceps groove, sub labral foramen in the anterior labrum, inflammation and fraying of the posterior labrum, unstable type II tear of the superior labrum, and inflammation of the rotator interval. There was inflammation and adhesions present throughout the bursa and the AC joint was arthritic. Pet. Ex. 6 at 48, 54-58.

Petitioner continued to have persistent left shoulder stiffness following his May 2018 surgery. An MRI on September 19, 2018 confirmed adhesive capsulitis, along with post-surgical edema and other findings requiring manipulation under anesthesia with fixation apparatus, arthrocentesis, and aspiration and a corticosteroid injection to the left glenohumeral joint. Pet. Ex. 2 at 27-28; Pet. Ex. 6 at 154-58.

Petitioner still suffered from left shoulder pain thereafter. Pet. Ex. 2 at 6, 9. By May 2019, he was noted as being at maximum medical improvement but with minimal residual deficits. *Id*. at 25.

Despite the medical records initially documenting complaints of pain and sensory issues associated with his neck, petitioner was subsequently diagnosed with and treated for a left shoulder injury consistent with the definition of SIRVA. Objective testing, both by MRI and EMG, ruled out cervical radiculopathy. However, the EMG did confirm carpal tunnel syndrome, which would explain the pain and sensory symptoms of the hand and fingers. Although the medical records in this case reflected symptoms beyond the confines of the shoulder, objective testing and treatment clearly show the shoulder injury. The objective evidence, treating physician opinion, and medical treatment preponderates in favor of a left shoulder injury. Therefore, petitioner has satisfied part (iii) of the SIRVA requirements.

### 4. Petitioner is required to show that no other condition or abnormality is present that would explain the petitioner's symptoms.

The fourth criterion requires that "no other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy)." 42 CFR § 100.3(c)(10)(iv). This criterion is satisfied for many of the same reasons discussed in the previous section.

Petitioner's EMG and MRI ruled out cervical pathology and the MRI confirmed left shoulder pathology. Pet. Ex. 2 at 27-28; Pet. Ex. 7 at 9. The carpal tunnel finding on EMG explained petitioner's complaints of sensory symptoms and pain in his left lower arm, hand, and fingers. More importantly, objective testing ruled out any neurological findings associated with his cervical spine, leaving only the pathology found for the left shoulder and biceps as the cause of his pain and limitations. Petitioner was then treated for a shoulder injury. The carpal tunnel syndrome was an incidental finding which explained his complaints, but it was not associated with his left shoulder and bicep and was not part of or addressed during his treatment.

The human body and individual perceptions of pain and symptoms do not necessarily fall neatly into a precise pattern, and how an individual perceives and articulates their symptoms of pain and sensation is unique to that individual. Often, those complaints can appear to be something they are not. Here, while petitioner's complaints led his nurse practitioner and physical therapist to suspect C6-C7 radiculopathy, objective testing ruled out any injury or condition arising from his neck. Dr. Huffman opined that the objective testing and findings during surgery were consistent with a SIRVA injury, which was what he diagnosed and treated petitioner for. The requirements of part (iv) for SIRVA are therefore satisfied.

Based on the foregoing, petitioner has satisfied all four of the SIRVA QAI criteria. Petitioner has demonstrated that his injury meets the Table definition of a SIRVA, and he is therefore entitled to the Table presumption of vaccine causation.

Having found that petitioner suffered a SIRVA injury and satisfied the SIRVA QAI criteria, the analysis need not go any further. Petitioner's carpal tunnel syndrome was an

incidental finding and explained some of his complaints, but was not associated with his left SIRVA injury and is therefore not part of his vaccine-related injury.

## VI.     Conclusion

Based on the record as a whole and for the reasons discussed above, I find there is preponderant evidence to establish that petitioner is entitled to compensation. Accordingly, this matter shall proceed to damages.

**IT IS SO ORDERED.**

**s/ Mindy Michaels Roth**
Mindy Michaels Roth
Special Master
