# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 20-271V**
Filed: September 22, 2026

| | |
|---|---|
| FRANK WEINBERG, | * |
| Petitioner, | * |
| v. | * |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * |
| Respondent. | * |

*Leigh Finfer, Esq.*, Muller Brazil, LLP, Dresher, PA, for petitioner.
*Adam Muffett, Esq.*, U.S. Department of Justice, Washington, DC, for respondent.

**DAMAGES DECISION**[1]

**Roth**, Special Master:

On March 11, 2020, Frank Weinberg filed a petition for compensation with the National Vaccine Injury Compensation Program,[2] alleging that he suffered a left shoulder injury related to vaccine administration ("SIRVA") as a result of the influenza ("flu") vaccine he received on November 16, 2017. Petition, ECF No. 1.

For the reasons described below, I find that petitioner is entitled to an award of damages in the amount of $150,000.00 for actual pain and suffering and $789.20 for unreimbursable expenses.

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. Any changes will appear in the document posted on the website.
[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

## I. Background

### A. Relevant Procedural History

A Ruling on Entitlement and a Damages Order issued on April 2, 2025. ECF Nos. 34-35. The parties attempted to resolve damages to no avail, and they were instructed to file simultaneous briefs on damages. ECF No. 38. The parties filed their respective briefs on July 14, 2025. Petitioner's Memorandum ("Pet. Memo"), ECF No. 40; Respondent's Memorandum ("Resp. Memo"), ECF No. 41.

This matter is now ripe for adjudication.

### B. Relevant Medical History

Petitioner's medical history is detailed in the Ruling on Entitlement and will thus not be repeated herein. Only a brief summary needed to assess damages is included below.

Petitioner is a police officer with no history of left shoulder injury. *See generally* Pet. Ex. 2. He received a Fluarix ("Flu") vaccine in his left arm on November 16, 2017. Pet. Ex. 1.

He presented to his primary care physician ("PCP") on November 27, 2017, with constant left arm pain that varied in intensity and location, including his shoulder above his elbow, his lower arm, his hands, and his left trapezius. Pet. Ex. 2 at 59. The assessment was "left arm pain/neck pain/left shoulder pain, suspect musculoskeletal etiology, other possibility (sic) causes including muscle aches related to flu vaccine and/or myalgias from taking statins." He was prescribed Skelaxin and directed to restart Mobic, avoid aggravating movements, and consider physical therapy ("PT"). *Id.*

Petitioner returned to the PCP on December 5, 2017, with left-sided shoulder, neck, and arm pain since receiving the flu vaccine with hand weakness and numbness in his left first through third fingers. Pet. Ex. 2 at 59. A Medrol Dosepak was prescribed. PT and an MRI were to be considered if his symptoms did not respond. *Id.*

Petitioner presented for PT on December 19, 2017. Pet. Ex. 4 at 30-38. He reported onset of pain the day after a flu vaccine, waking up with pain down his left upper extremity and trunk, including scapular pain. He had a severe ache with intermittent sharp/shooting pain, numbness, and tingling into the hands. *Id.* at 31. He had been to the doctor twice and given muscle relaxers and steroids, but neither helped. *Id.* He was having trouble getting to sleep and was waking constantly. He had trouble reaching, which caused pain and tingling. *Id.*

Petitioner returned to his PCP's office on January 22, 2018, reporting left arm numbness and pain, shoulder pain, and neck pain. Pet. Ex. 2 at 58. He was receiving PT for more than a month with worsening numbness going down his arm, including his thumb, index, and middle fingers. The pain had lessened overall, but the numbness was fairly persistent and he noticed numbness developing in his other two left fingers intermittently. He had occasional weakness in his left arm. *Id.* He had no response to the Medrol Dosepak or muscle relaxers. His pain also

radiated up his arm from his wrist to elbow to shoulder. *Id*. He reported that the physical therapist was confused by his lack of response to treatment and suspected shoulder involvement. *Id*. MRIs of the cervical spine and left shoulder were ordered. *Id*.

The MRI of the cervical spine on January 25, 2018, revealed mild degenerative changes of the cervical spine with minimal bilateral foraminal stenosis at C3-C4. Pet. Ex. 2 at 53. MRI of the left shoulder revealed supraspinatus tendinopathy without evidence of rotator cuff tear, mild to moderate AC joint arthropathy, biceps tenosynovitis, and slight increased signal in the superior labrum. *Id*. at 78.

Petitioner presented to Dr. Huffman at Penn Medicine Radnor Orthopedics on February 20, 2018 reporting left shoulder pain with radiculopathy into his hand following a flu shot in November 2017. Pet. Ex. 6 at 35. The MRI of the left shoulder showed slight fluid in the subacromial space consistent with bursitis, and a little bit of edema in the humeral head. Both were consistent with vaccine-related bursitis or SIRVA-type injury to the left shoulder. A Kenalog corticosteroid injection was administered. *Id*. at 39-40.

Petitioner returned to Dr. Huffman on April 3, 2018 for follow-up. It was noted that he received a flu vaccine on November 16, 2017 and had "immediate pain, which increased and has not resolved." Cortisone injection did not help but rather increased his symptoms. Pet. Ex. 6 at 41, 44. An EMG was ordered, and arthroscopic surgery was discussed and later scheduled. *Id*. at 44, 48-49; *see also* Pet. Ex. 2 at 11; Pet. Ex. 5 at 1.

An EMG performed on April 24, 2018 revealed carpal tunnel syndrome with no other abnormalities in the left upper extremity. Pet. Ex. 7 at 9.

On May 16, 2018, petitioner underwent arthroscopic surgery of his left shoulder and arm. Pet. Ex. 6 at 56-59; *see also* Pet. Ex. 8 at 20-23. Findings during surgery included an abnormal tendon tear at the biceps anchor with inflammation in the biceps groove, sub-labral foramen in the anterior labrum, inflammation and fraying of the posterior labrum, an unstable type II tear of the superior labrum, and inflammation of the rotator cuff interval. Pet. Ex. 6 at 57-58. Inflammation and adhesions with thickening present throughout the bursa were noted. The AC joint was arthritic. *Id*. at 58.

On September 19, 2018 petitioner underwent another MRI of the left shoulder due to continuing shoulder pain and decreased range of motion following surgery. Pet. Ex. 2 at 27. When compared with the January 25, 2018 MRI, this MRI revealed the interval coracoacromial decompression with widening of the AC joint and some nonspecific post-surgical edema at the resection site. *Id*. at 28. It also included findings that could represent inferior joint capsulitis with concomitant rotator cuff interval synovitis and an apparent new tear with retraction of the biceps tendon, unless there was an interval history of tenodesis that was not appreciated by imaging. There was also a new partial-thickness articular surface tear of the distal supraspinatus tendon and increased mild subacromial-subdeltoid bursitis. *Id*.

Petitioner underwent manipulation under anesthesia of the left shoulder on September 26, 2018 with fixation apparatus, arthrocentesis, and aspiration. Pet. Ex. 6 at 156-58. He received a

Kenalog injection in the left glenohumeral joint. *Id*. at 158. The record noted post-operative left shoulder stiffness following the May 2018 surgery with failure of conservative therapy. *Id*. at 157.

Petitioner presented to his PCP on October 23, 2018 with continued left shoulder pain. He was still in PT. Pet. Ex. 2 at 9, 10.

Six months later, petitioner returned to Dr. Huffman who noted that petitioner had undergone surgery for biceps tenodesis, debridement, and decompression due to a left shoulder injury from a flu vaccine. He had reached maximum medical improvement but still had very minimal residual deficits. Pet. Ex. 2 at 25.

Petitioner reported continued shoulder pain to his PCP on May 7, 2019, which was slowly improving with some right fourth finger stiffness and "trigger finger" when he extends the digit. Pet. Ex. 2 at 6.

### C. Petitioner's Affidavit

Petitioner submitted an affidavit which confirmed receipt of the flu vaccine on November 16, 2017 in his left shoulder, a left shoulder injury caused by that vaccination, and that he had no prior left shoulder injury. He affirmed that he suffered the residual effects or complications of that left shoulder injury for more than six months, and he has not received an award or settlement for his injuries. Pet. Ex. 9.

## II. The Parties' Arguments

### A. Petitioner's Memorandum

Petitioner requests a total pain and suffering award of $175,000.00 and past expenses of $789.20 already stipulated to by respondent. Pet. Memo at 6, 8. Petitioner argues that he participated in 59 physical therapy sessions, received a steroid injection, and underwent multiple MRIs; when all conservative treatment failed, he underwent left shoulder arthroscopy. Failing to improve after surgery, he required manipulation under anesthesia. He suffered symptoms for approximately 18 months. *Id*. at 7.

Petitioner submitted two cases to support his demand for $175,000.00. In *Edwards v. Sec'y of Health & Human Servs.,* No. 21-56V, 2023 WL 6847484 (Fed. Cl. Spec. Mstr. Sept. 11, 2023), the petitioner attended 53 physical therapy sessions, had 2 steroid injections, 2 MRIs, and underwent manipulation under anesthesia and subsequent left shoulder arthroscopy. Pet. Memo at 7. The petitioner made good progress in her recovery with pain levels of 2-3/10 at discharge from therapy meeting 95% of her rehab goals. *Id*. Here, petitioner met only half of his goals when discharged from physical therapy, still had limited range of motion, complained of pain up to 5/10, and felt he had reached a "plateau." *Id*. Petitioner here also suffered increased pain after the steroid injection rather than improvement. *Id*. at 8; Pet. Ex. 6 at 44. Thus, his pain and suffering is at least equivalent to or exceeds that of Ms. Edwards who was awarded $173,000.00. Pet. Memo at 8.

In *Rice-Hansen v. Sec'y of Health & Human Servs.*, No. 20-1338V, 2022 WL 18339478 (Fed. Cl. Spec. Mstr. Dec. 9, 2022), the petitioner underwent arthroscopic surgery, manipulation under anesthesia, 40 physical therapy sessions, and a cortisone injection over a 26-month period. Though Ms. Rice-Hansen's treatment was over a longer period of time, petitioner argued that he attended more physical therapy sessions. Ms. Rice-Hansen was awarded $175,000.00 for pain and suffering, and his case warrants at least an equivalent award. Pet. Memo at 8.

**B. Respondent's Memorandum**

Respondent argues that $105,000.00 is an appropriate award for petitioner's pain and suffering. Resp. Memo at 2. According to respondent, petitioner was treated with medications including Skelaxin and a Medrol Dosepak, completed 42 physical therapy sessions, received two steroid injections, and underwent two MRIs, surgery, and manipulation under anesthesia. He was largely recovered around a year after vaccination. *Id*. at 7. Respondent also noted that 16 of petitioner's physical therapy sessions focused on his neck and that the MRI following his arthroscopic surgery showed a "new partial-thickness articular surface tear of the distal supraspinatus tendon that was not present in his initial MRI or his post-surgical diagnosis." *Id*.

Respondent relied on *Meyers v. Sec'y of Health & Human Servs.*, No. 20-779V, 2024 WL 706877 (Fed. Cl. Spec. Mstr. Jan. 12, 2024) as instructive since both the petitioner in that case and petitioner here suffered moderate SIRVA injuries, but Ms. Meyers' injury was more severe and of a longer duration and she was awarded $125,000.00. She was treated with prednisone and Tramadol, had 4 steroid injections, 20 physical therapy sessions, and underwent 2 MRIs and 2 shoulder surgeries. Ms. Meyers received two more steroid injections than petitioner here. Resp. Memo at 8. Ms. Meyers' PT extended over 16 months, while petitioner's treatment here was over 12 months. *Id*. at 9. Both petitioner and Ms. Meyers had findings on MRIs following surgery that were not seen on prior MRIs, and the Chief Special Master concluded that Ms. Meyers' second surgery was unrelated to her SIRVA. *Id*. at 8, 9. Respondent argued that petitioner's manipulation under anesthesia should not be considered in the damages here. *Id.* at 9-10. Therefore, petitioner should be awarded $105,000.00 for less severe SIRVA of shorter duration and an unrelated tear of the supraspinatus tendon. *Id*. at 10.

Respondent then distinguished *Edwards* and *Rice-Hansen* in which the petitioners were awarded $173,000.00 and $175,000.00, respectively. The petitioners in both *Edwards* and *Rice-Hansen* had manipulations under anesthesia that were more clearly related to their SIRVA and not some later injury. Resp. Memo at 10, 12. Ms. Edwards had 53 physical therapy visits over 14 months, two steroid injections, two MRIs, surgery for a tear seen on initial MRI, and manipulation under anesthesia. *Id*. at 10-11. Here, petitioner's initial MRI did not show a tear, he was discharged in 12 months reporting "0" pain at best, 3-4 out of 10 pain with reaching overhead, had a five-month gap after his final PT session, and upon return to the orthopedic surgeon reported few remaining shoulder symptoms for which he did not seek further care. *Id*. at 11.

The petitioner in *Rice-Hansen* was treated over the course of 26 months with two rounds of muscle relaxers and prednisone, had 39 physical therapy sessions, two MRIs with evidence of a tear on the initial MRI, had one steroid injection, and underwent surgery and manipulation under anesthesia over a 26-month period. Resp. Memo at 12. Here, petitioner's treatment lasted 12

months, with one round of muscle relaxers and prednisone and the tear requiring the second surgical procedure was not included in the post-operative note after his first surgery. *Id*.

## III. Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment awarding such expenses which (i) resulted from the vaccine-related injury for which the petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (citing *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

Although pain and suffering in the past was often determined based on a continuum, that practice was cast into doubt by the Court several years ago. *Graves v. Sec'y of Health & Human Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). In *Graves,* the Court maintained that to do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 589-90. Instead, *Graves* assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id*. at 593-95. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap. Although *Graves* does not dictate the outcome in this case, it offers a reasoned understanding of the issues involved in pain and suffering calculations.

To aid in my decision, I may consider prior pain and suffering awards for the appropriate amount of compensation for pain and suffering along with my own experience in adjudicating other similar claims. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009); *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993).

## IV. Discussion

The record reflects that petitioner was a competent adult with no impairments that would impact his awareness of his injury. Therefore, the following analysis is principally of the severity and duration of petitioner's injury.

In performing the analysis, I reviewed the record as a whole, including the medical records and assertions made by both parties in their submissions. I also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and relied on my experience in adjudicating these cases but based my determination on the specific circumstances of this case.

The medical records establish that petitioner had onset of symptoms within a day of vaccination, prescriptions for Skelaxin, Mobic, a Medrol Dosepak, and muscle relaxers, physical therapy, and a steroid injection. Pet. Ex. 2 at 58-59; Pet. Ex. 4 at 30-38; Pet. Ex. 6 at 39-44. He underwent EMG, which was consistent with carpal tunnel syndrome but showed no other abnormalities. Pet. Ex. 7 at 9. His initial MRI of the left shoulder revealed supraspinatus tendinopathy without evidence of rotator cuff tear, mild to moderate AC joint arthropathy, biceps tenosynovitis, and slightly increased signal in the superior labrum. Pet. Ex. 2 at 78.

Around 6 months after receiving the flu vaccine, petitioner underwent arthroscopic surgery. Findings during the surgery included an abnormal tendon tear at the biceps anchor with inflammation in the biceps groove, inflammation and fraying of the posterior labrum, an unstable type II tear of the superior labrum, and inflammation of the rotator cuff. There was also inflammation and adhesions with thickening present throughout the bursa. The AC joint was arthritic. Pet. Ex. 6 at 56-59.

Four months later, petitioner had another MRI, which revealed an apparent new tear with retraction of the biceps tendon not seen on prior imaging, a new partial-thickness articular surface tear of the distal supraspinatus tendon, and increased mild subacromial-subdeltoid bursitis. Pet. Ex. 2 at 27-28. Petitioner underwent manipulation of the left shoulder under anesthesia and received another Kenalog injection. Pet. Ex. 6 at 156-58. In April of 2019, his orthopedist deemed petitioner to have reached maximum medical benefit after the flu vaccine with minimal residual deficits. Pet. Ex. 2 at 25. He still had some shoulder pain but did not seek further treatment.

Respondent argued that petitioner's manipulation under anesthesia was not vaccine-related and should not be considered part of the damages calculation. The second MRI done after his initial surgery showed tears not seen on his initial MRI or included in the post-operative findings, indicating that this injury occurred at some point after his initial surgery. He also pointed to petitioner's carpal tunnel syndrome diagnosis as evidence of a comingled condition. Resp. Memo at 12-13.

I agree with respondent that petitioner's second MRI after his arthroscopic surgery included findings not seen on the initial MRI or included in the post-arthroscopic surgery report. Thus, the evidence supports that these findings were unrelated to his vaccine injury. However, petitioner's diagnosis of carpal tunnel syndrome by EMG does not dilute his claim or serve as "evidence of an at least potentially comingled condition…" as suggested by respondent. Rather, this additional

diagnosis explains some of petitioner's complaints in the first few months following receipt of the subject flu vaccine that were incorrectly assessed and treated as cervical radiculopathy, which objective testing later showed that he did not have and explains why the treatment ordered provided no relief. Thus, the existence of an additional diagnosis of carpal tunnel confused petitioner's clinical picture, resulting in his left shoulder and arm pain going essentially untreated for about three months following his flu vaccine.

Turning next to comparable damage awards, both parties provided what they argued to be comparable SIRVA cases to support their arguments and requested awards. Petitioner relied on *Edwards* and *Rice-Hansen*, both of which involved surgery and manipulation under anesthesia.

In *Edwards*, the petitioner suffered a mild to moderate SIRVA for 18 months, attended 53 PT sessions, had two MRIs, and two steroid injections in addition to two surgical procedures. The Chief Special Master specifically addressed the manipulation under anesthesia, noting that while it is not as severe a surgery as arthroscopic surgery, it deserves more value than other less invasive procedures. The petitioner in that case was awarded $173,000.00. *Edwards,* No. 21-56V, 2023 WL 6847484, at *3-4.

The petitioner in *Rice-Hansen* had arthroscopic surgery, manipulation under anesthesia, 39 PT sessions, a cortisone injection, two MRIs, and numerous medications over a 26-month period. Her inability to take anti-inflammatory medications and NSAIDs negatively impacted her ability for pain relief. She was awarded $175,000.00 in pain and suffering. *Rice-Hansen*, No. 20-1338V, 2022 WL 18339478, at *1, 7, 10.

Respondent cited *Meyers* to support his requested award of $105,000.00. The petitioner in *Meyers* had two MRIs, received four steroid injections which provided relief, underwent arthroscopic surgery, had 21 physical therapy sessions, and was discharged from treatment 16 months post-vaccination. The petitioner in *Meyers* was awarded $125,000.00. *Meyers*, No. 20-779V, 2024 WL 706877, at *1, 4.

I agree with petitioner that this case is analogous to *Edwards* and *Rice-Hansen* in that petitioner reported immediate pain following vaccination, quickly sought treatment, was prescribed medications, had a Kenalog injection, attended over 50 PT sessions, and had arthroscopic surgery related to his vaccine related injury over a one-year period. However, as respondent suggests and *Meyers* depicts, the MRI three months after the arthroscopic surgery, the manipulation under anesthesia, and the second Kenalog injection after that surgery were more likely than not unrelated to his vaccine injury. Based on the foregoing, the awards in *Edwards* and *Rice-Hansen* are higher than what is appropriate here; but petitioner received significantly more PT than did the petitioner in *Meyers*, thereby warranting a higher award than what was awarded in *Meyers*.

The Chief Special Master has discussed the differences between cases in which damages are agreed upon by the parties and cases in which damages are determined by the special master, the latter of these being said to "provide the most reliable guidance in deciding what similarly-situated claimants should also receive." *Pello v. Sec'y of Health & Human Servs.,* No. 24-1896V, 2026 WL 2211341, at *2 (Fed. Cl. Spec. Mstr. July 14, 2026); *Sakovits v. Sec'y of Health & Human*

*Servs.,* No. 17-2038, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020). Upon review of other reasoned damages decisions on SIRVA claims, the median award was just under $86,000.00. Higher awards were generally awarded to petitioners with more significant levels of pain often evidenced by immediately seeking treatment and significant MRI findings often requiring surgical intervention. *Pello,* No. 24-1896V, 2026 WL 2211341, at *3. Here, petitioner had immediate onset of symptoms, sought treatment rather quickly, continued to experience pain for 3 months that was not correctly diagnosed and therefore was untreated, subsequently participated in PT for months with little improvement, received a Kenalog injection that only worsened his pain, and eventually underwent arthroscopic surgery. Therefore, I find an award on the higher end of the spectrum to be appropriate.

There is a significant gap in the award requested by petitioner and that suggested by respondent. A few other analogous cases are instructive on where an appropriate award should fall. The petitioner in *S.C. v. Sec'y of Health & Human Servs.,* No. 19-341V, 2021 WL 2949763, at *1, 4 (Fed. Cl. Spec. Mstr. June 14, 2021), suffered a moderate SIRVA treated over the span of 38 months but with a 21-month gap in treatment. The petitioner had surgery, received 4 cortisone injections, and had 95 sessions of PT. She was awarded $160,000.00 in pain and suffering.

The petitioner in *Stromer v. Sec'y of Health & Human Servs.,* No. 19-1969V, 2022 WL 1562110, at *1, 9-10 (Fed. Cl. Spec. Mstr. Apr. 8, 2022), suffered a severe SIRVA for 3 months that became more moderate over the following months, required surgery, 60 sessions of PT, and one cortisone injection. That petitioner was awarded $145,000.00 in past pain and suffering with $500 per year for future pain and suffering.

Overall, considering the facts of this case, arguments presented by both parties, and review of comparable cases, I find that $150,000.00 in compensation for past pain and suffering is a reasonable and an appropriate award in this case. It is lower than what was awarded in *S.C.*, which is reasonable given the longer duration of treatment and extensive PT in that case, but is slightly higher than the award in *Stromer*, considering the similarity between the two cases and that the award here does not encompass any future pain and suffering.

## V. Conclusion

In light of the foregoing, I award petitioner a lump sum of **$150,789.20**, representing $150,000.00 for petitioner's past pain and suffering and $789.20 for unreimbursable expenses, **to be paid through an ACH deposit to petitioner's counsel's IOLTA account for prompt disbursement.** The Clerk of the Court shall enter judgment accordingly.[3]

**IT IS SO ORDERED.**

**s/ Mindy Michaels**
Mindy Michaels Roth
Special Master

[3] Pursuant to Vaccine Rule 11(a), if a motion for review is not filed within 30 days after the filing of the special master's decision, the clerk will enter judgment immediately.